**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| DENNIS HOGUE,<br><br>        Plaintiff,<br><br>    v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS, WARDEN JOHN VARGA, WEXFORD HEALTH SOURCES, INC., DR. MERRILL ZAHTZ, NURSE SUSAN TUELL, and DOE NO. 1,<br><br>        Defendants. | Jury Demand<br><br>Case No. 3:19-cv-50151<br><br>Hon. Lisa A. Jensen |

**SECOND AMENDED COMPLAINT**

Plaintiff Dennis Hogue, by and through his attorneys, Jenner & Block LLP, hereby brings this Second Amended Complaint against the Illinois Department of Corrections (the "IDOC"), Warden John Varga ("Warden Varga"), Wexford Health Sources, Inc. ("Wexford"), Dr. Merrill Zahtz ("Dr. Zahtz"), Nurse Susan Tuell ("Nurse Tuell"), and Doe No. 1 ("Officer Doe") (collectively, "Defendants").

**INTRODUCTION**

1. From January 29, 2018, through October 10, 2019, Mr. Hogue was a prisoner in the care and custody of the IDOC. During the entirety of Mr. Hogue's incarceration, he was legally blind and suffered from several pre-existing debilitating medical conditions, including double hip and left knee replacements, and chronic arthritis. Despite these medical conditions, Defendants subjected Mr. Hogue to multiple distinct violations of his Eighth Amendment rights resulting in serious and debilitating bodily injuries, for which he seeks relief pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

2. Mr. Hogue lived in three different housing units at Dixon Correctional Center ("Dixon"): Housing Units 44, 66, and 38. In Housing Unit 44, he was forced to walk outside, even in the snow, to meal service (hereafter "chow") and church service with no assistance. As a result, Mr. Hogue would often fall and have to crawl to keep up. Officer Doe verbally harassed and humiliated Mr. Hogue about not being able to keep up with the line. Upon information and belief, Mr. Hogue missed at least 10-15 meals as a result of his inability to make it to chow.

3. Despite making requests to move into a unit that reasonably accommodated his medical conditions, Mr. Hogue was next forced to move into Housing Unit 66 with stairs and a high gallery, despite his being legally blind and ambulatory handicapped. On at least one occasion, Mr. Hogue fell down the stairway, lost consciousness, and seriously injured his hip, back, and neck. He continues to suffer from these seemingly permanent injuries post-release and has been hospitalized numerous times since his release from Dixon.

4. Mr. Hogue exhausted his administrative remedies in accordance with the Prison Litigation Reform Act's requirements.

5. Collectively referred to as the Defendants are the following entities and individuals, identified to the extent presently known to Mr. Hogue: the IDOC, Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe, who is currently an unknown correctional officer in the IDOC.

6. At all times relevant to the events at issue in this case, the Defendants acted under color of law and within the scope of their employment or agency by: (1) denying Mr. Hogue reasonable disability accommodations, such as accessible facilities, walking assistance, and food delivery; (2) witnessing Mr. Hogue suffer from the lack of reasonable disability accommodations for a significant time and failing to act; (3) failing to act upon acknowledging Mr. Hogue's serious

medical conditions and urgent need for a housing unit transfer and other accommodations; and (4) purposefully, knowingly, or at least recklessly denying or delaying Mr. Hogue's access to necessary disability accommodations and medical care. Mr. Hogue sues each individual Defendant in his or her individual and official capacity.

## JURISDICTION, VENUE, AND PARTIES

7. Mr. Hogue brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. This Court has subject matter jurisdiction over this action pursuant to both 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

8. Venue is proper in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred at Dixon in Dixon, Illinois, which is located in this judicial district.

9. Mr. Hogue is a resident of and domiciled in the State of Illinois and was a prisoner in the custody of the IDOC. From January 29, 2018, until October 10, 2019, Mr. Hogue was confined at Dixon. On October 10, 2019, Mr. Hogue was released from Dixon and is currently on parole.

10. On information and belief and at all relevant times, the IDOC is the Illinois state agency that runs Illinois state prisons, including Dixon.

11. On information and belief and at all relevant times, Defendant John Varga was the Warden of Dixon, employed by the IDOC, and acted under color of state law.

12. Wexford is a corporation formed under the laws of the state of Florida with its principal place of business in Pittsburgh, Pennsylvania. On information and belief and at all relevant times, Wexford had a contractual relationship with IDOC. Pursuant to that contractual

relationship, IDOC, an agency of the state of Illinois, delegated responsibility for providing reasonable medical care to inmates in IDOC custody to Wexford. As an IDOC agent exercising delegated governmental functions, Wexford is a state actor under 42 U.S.C. § 1983.

13. On information and belief and at all relevant times, Defendant Dr. Merrill Zahtz was a physician employed by Wexford. Because of Mr. Hogue's status as an inmate at Dixon, Dr. Zahtz was responsible for Mr. Hogue's medical care. Dr. Zahtz acted under color of state law.

14. On information and belief and at all relevant times, Defendant Nurse Susan Tuell was a family nurse practitioner employed by Wexford. Because of Mr. Hogue's status as an inmate at Dixon, Nurse Tuell was responsible for Mr. Hogue's medical care. Nurse Tuell acted under color of state law.

15. On information and belief and at all relevant times, Officer Doe was a correctional officer, employed by the IDOC, and acted under color of state law.

16. At all relevant times, each of the Defendants' actions occurred within the State of Illinois and affected Mr. Hogue within the State of Illinois. This Court therefore has personal jurisdiction over the Defendants, each of whom, on information and belief, is and at all relevant times has been a resident of and domiciled in the State of Illinois.

## FACTUAL ALLEGATIONS

17. All factual assertions stated herein are based on Mr. Hogue's personal knowledge or are alleged on information and belief.

### *Mr. Hogue's Medical History*

18. Mr. Hogue was a prisoner confined by the IDOC from January 29, 2018, until October 10, 2019.

4

19. While at Dixon, Mr. Hogue suffered from serious pre-existing medical conditions, namely legal blindness, double hip and left knee replacements, hepatitis C, schizoaffective disorder, asthma, and chronic arthritis.

20. When Mr. Hogue first arrived at Dixon, he was automatically given a permit from healthcare, due to the aforementioned conditions, which meant he could not get placed in a housing unit with a high gallery or a high bunk.

*The Confinement Conditions at Dixon at Housing Unit 44*

21. Mr. Hogue was placed in Housing Unit 44, which had a low gallery, but was located far away from chow and church.

22. Mr. Hogue would have to walk approximately 1 mile to go to chow every day, and even farther to attend church services every other Sunday.

23. On or about October 30, 2018, Dr. Zahtz saw Mr. Hogue as a patient and reviewed his medical recommendations. Although Dr. Zahtz was aware that Mr. Hogue had eyesight problems, he did not recommend or take any action to have Mr. Hogue moved to a more suitable housing unit.

24. Mr. Hogue was unable to keep up with the chow line, and would often fall and have to crawl to keep up. Officer Doe verbally harassed and humiliated Mr. Hogue about not being able to keep up with the line. Officer Doe also told him to keep up with the line or he could go to solitary confinement.

25. Mr. Hogue explained to Officer Doe that he was legally blind, expressed his difficulty walking to chow, and requested his meals be delivered to the housing unit, but the officers repeatedly denied his requests. As a result, Mr. Hogue missed at least 10-15 meals due to his inability to make it to chow.

26. On or about December 9, 2018, Mr. Hogue visited the healthcare clinic. According to the Offender Injury Report, when Mr. Hogue was heading back from church, he couldn't keep up with the line and fell. Mr. Hogue injured his knees and right cheek. His Offender Injury Report was reviewed and signed by Nurse Tuell, who did not recommend or take any action to have Mr. Hogue moved to a more suitable housing unit.

27. On or about January 25, 2019, Mr. Hogue visited the healthcare clinic. According to the Offender Outpatient Progress Notes, Mr. Hogue requested lay-in for meals to be delivered 3 times a day due to frequent falls, blindness, and housing unit issues.

28. During Mr. Hogue's visits to the healthcare clinic, he explained his difficulty walking from Unit 44 to medical personnel, including Dr. Zahtz and Nurse Tuell, but he was told that there was nothing that could be done and that Mr. Hogue would have to talk to Warden Varga.

29. Mr. Hogue asked Officer Doe to transfer him to a different housing unit. Officer Doe told him that he could move to Unit 66, which was closer to chow but had stairs, or he could go to solitary confinement.

30. Mr. Hogue was never given the option of moving into a housing unit for disabled inmates even though Dixon had such a unit.

31. Mr. Hogue was forced to move to Unit 66 in or around February 2019. Correctional officers told him the order "came from the top." Mr. Hogue assumed this meant Warden Varga transferred him to Unit 66.

32. The combination of Mr. Hogue's blindness, Dixon's inadequate facilities combined with Defendants' lack of assistance to Mr. Hogue, and conscious disregard of both Mr. Hogue's legally blind status and debilitating physical ailments, significantly harmed Mr. Hogue and ultimately caused him to suffer humiliation and mental and physical anguish.

33. Mr. Hogue's conditions of confinement, specifically his limited access to reasonable disability accommodations, were unconstitutional.

*The Confinement Conditions at Dixon Housing Unit 66*

34. In or around February 2019, Mr. Hogue was placed in Housing Unit 66.

35. At all relevant times, Housing Unit 66 had a stairway, consisting of approximately 10 cement stairs, which Mr. Hogue had to frequently go up or down when he traveled to or from his cell. The stairway had 2 railings, one of which was loose. Despite the poor condition of the railings, Mr. Hogue had to hold one railing and use his cane with the other hand when walking up or down the stairs due to his medical conditions.

36. Mr. Hogue made a number of complaints about the stairway to various correctional officers.

37. Prior to Mr. Hogue's fall down the stairs, several Dixon correctional officers told Mr. Hogue that they knew that he should not have been placed in Housing Unit 66 and that the stairs were dangerous for him to walk on.

38. Mr. Hogue complained directly to Warden Varga about the difficult conditions in Unit 66. He explained to Warden Varga that he was legally blind and had difficulty walking up and down the stairs. Warden Varga's response was to simply give Mr. Hogue a care package with soap and deodorant with a promise that he would take care of it. Mr. Hogue assumed this meant Warden Varga would transfer him to a low gallery, but Warden Varga did not take any action to rectify the dangerous situation before Mr. Hogue fell down the stairs.

39. On or about February 1, 2019, during one of his trips from his cell, Mr. Hogue slipped and fell frontward down the stairs and flipped over several times. The impact from his body crashing into the cement multiple times caused him to lose all consciousness.

40. Mr. Hogue suffered new scratches on his face, neck pain, back pain, and large swelling on his hip because of his fall down the stairway.

41. This fall would not have occurred had Mr. Hogue been transferred to a low gallery as he requested multiple times.

42. After the fall down the stairs, Mr. Hogue had to participate in physical therapy twice a week for 2 months. He also had to receive electrotherapy for his neck and injuries. To find some additional relief from the pain he was in, he used topical menthol ointment for his hip, required massages for his back, and wore a neck brace. He also used a cane to help him walk.

43. To this day, Mr. Hogue continues to suffer from severe pain, including hip pain, back pain, and neck pain. As a result of these injuries, and the physical effects they caused, Mr. Hogue has continuing problems at times with walking and performing everyday tasks. He has been hospitalized twice and is currently in a nursing & rehabilitation facility as a result of these injuries.

44. Additionally, Mr. Hogue submitted a written grievance alerting administrators and other members of Dixon's staff to his inability to be transferred to an accessible housing unit and other accommodations for his conditions.

45. The combination of Mr. Hogue's blindness, Defendants failure to provide reasonable disability accommodations such as accessible facilities, combined with Defendants' lack of assistance to Mr. Hogue, and conscious disregard of both Mr. Hogue's legally blind status and debilitating physical ailments, significantly harmed Mr. Hogue and ultimately caused him to suffer humiliation and mental and physical anguish.

46. Mr. Hogue's conditions of confinement, specifically his limited access to accessible facilities, were unconstitutional.

*The Confinement Conditions at Dixon Housing Unit 38*

47. Mr. Hogue was placed in Housing Unit 38 in or around March 2019, in which he was housed on a flat floor with his own room. He also had his meals delivered to his unit.

48. On or about March 20, 2019, Mr. Hogue visited the healthcare clinic. According to the Offender Outpatient Progress notes, Mr. Hogue reported several falls in the past several weeks and neck pain.

49. On or about March 28, 2019, Mr. Hogue visited the healthcare clinic. According to the Offender Outpatient Progress notes signed by Nurse Tuell, Mr. Hogue reported neck pain and asked about switching from a hard neck collar to a soft one. The notes also state that Dr. Zahtz reviewed his x-ray.

50. In April 2019, Dixon officials decided to stop providing Mr. Hogue with necessary medical treatment after they were notified of his lawsuit. Yet he continued to suffer from severe pain, including hip pain, back pain, and neck pain.

51. Additionally, Mr. Hogue submitted two written grievances alerting administrators and other members of Dixon's staff to the failure to reasonably accommodate his medical conditions.

52. The administrative staff at Dixon reviewed these grievances and refused to remedy the situation.

53. The warden and his staff continued to provide Mr. Hogue with constitutionally inadequate disability accommodations.

54. Pursuant to a policy, pervasive practice, or custom at Dixon and Wexford, Defendants denied Mr. Hogue reasonable disability accommodations, such as accessible housing,

walking assistance, and food delivery, to accommodate his legally blind status and other serious conditions.

## Count I:
**Violation of the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983
Defendants Were Deliberately Indifferent to Mr. Hogue's Urgent Medical Needs and Delayed His Access to Necessary Accessible Facilities and Other Accommodations from January 2018 until March 2019
(Against Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe)**

55. The allegations of paragraphs 1 through 54 are incorporated herein by reference.

56. The Eighth Amendment to the United States Constitution requires that correctional facilities provide disability accommodations.

57. Mr. Hogue had serious medical conditions, including blindness.

58. Mr. Hogue was forced to walk far with no assistance, even in the very poor outdoor weather conditions, in order to go to chow every day and church service every other Sunday.

59. Mr. Hogue would often fall and have to crawl to keep up with the chow line. Officer Doe verbally harassed and humiliated Mr. Hogue about not being able to keep up with the line. Mr. Hogue missed at least 10-15 meals as a result of his inability to make it to chow.

60. Mr. Hogue repeatedly asked Warden Varga, Dr. Zahtz, Nurse Tuell, and Officer Doe to transfer him to another housing unit, but they denied his requests.

61. Dr. Zahtz and Nurse Tuell, both employees of Wexford, saw Mr. Hogue as a patient, reviewed his records, and were aware of his serious medical conditions, and never recommended or assisted in having him moved to a suitable housing unit or provided additional assistance.

62. Dr. Zahtz and Nurse Tuell were operating under the policies, procedures, and customs of Wexford at all relevant times.

63.     In or around February 2019, Warden Varga then decided to move Mr. Hogue to Housing Unit 66 with stairs and a high gallery.

64.     Mr. Hogue informed Warden Varga that he had difficulty walking up and down the stair, but Warden Varga did not take any action.

65.     On or about February 1, 2019, Mr. Hogue fell down the stairs and suffered serious injuries to his hip, back, and neck. He continues to suffer from injuries resulting from the stairway fall incident.

66.     The lack of reasonable disability accommodations, such as accessible facilities, walking assistance, and food delivery, created a serious risk to Mr. Hogue because of his legally blind status and other medical conditions.

67.     Mr. Hogue communicated the lack of reasonable disability accommodations and its likely effect on his well-being to Warden Varga, Dr. Zahtz, Nurse Tuell, and Officer Doe verbally and through written grievances.

68.     Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe knowingly ignored these hazards, acting with deliberate indifference to the conditions of Mr. Hogue's confinement.

69.     Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe refused for over a year to let Mr. Hogue transfer to an accessible housing unit despite being aware of his serious medical conditions. Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe also refused to provide walking assistance and food delivery when they knew about Mr. Hogue's needs given his legally blind status and walking difficulties. Their delay in action in response to Mr. Hogue's situation led to Mr. Hogue falling down the stairs and suffering further serious injuries.

70. Mr. Hogue still suffers from pain to this day and has endured multiple visits to the hospital as a result. Consequently, the actions of Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe amounted to deliberate indifference to the unlawful conditions of Mr. Hogue's confinement.

71. Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe were acting under color of law when they took these actions. In so doing, Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe violated Mr. Hogue's clearly established rights under the Eighth Amendment by subjecting him to conditions and policies at Dixon that amount to unconstitutional conditions of confinement. Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe are therefore liable to Mr. Hogue under 42 U.S.C. § 1983.

**Count II:**
**Violation of the Eighth Amendment to the U.S. Constitution and 42 U.S.C. § 1983**
**Defendants Knowingly or at Least Recklessly Disregarded Mr. Hogue's Urgent Medical Needs and Denied His Access to Medical Treatment from April 2019 until October 2019**
**(Against Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe)**

72. The allegations of paragraphs 1 through 71 are incorporated herein by reference.

73. The Eighth Amendment requires that correctional facilities provide inmates necessary medical care, including treatment for serious medical conditions.

74. In our around February 2019, Mr. Hogue was transferred from Housing Unit 44, with a low gallery, to a Housing Unit 66, with a stairway and a high gallery.

75. Mr. Hogue explained to Warden Varga, Dr. Zahtz, Nurse Tuell, and Officer Doe that he was legally blind and expressed his difficulty walking up and down the stairs, but Warden Varga, Dr. Zahtz, Nurse Tuell, and Officer Doe refused to remedy these conditions.

76. Mr. Hogue fell down the stairway, lost consciousness, and injured his hip, back, and neck. He continues to suffer from injuries resulting from the stairway incident.

77. In our around March 2019, Mr. Hogue was later transferred to Housing Unit 38.

12

78. In or around April 2019, Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe stopped providing Mr. Hogue any access to medical treatment after Dixon was notified of his lawsuit. Yet he continued to suffer from severe pain.

79. Dr. Zahtz and Nurse Tuell were operating under the policies, procedures, and customs of Wexford at all relevant times.

80. As a direct and proximate result of the decision of Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe to stop treating Mr. Hogue, he continued to suffer from his serious medical conditions, which still cause him pain today.

81. Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe were acting under color of law when they took these actions. In so doing, Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe violated Mr. Hogue's clearly established rights under the Eighth Amendment by disregarding objectively serious medical conditions and denying his access to accessible facilities and other accommodations. Warden Varga, Wexford, Dr. Zahtz, Nurse Tuell, and Officer Doe are therefore liable to Mr. Hogue under 42 U.S.C. § 1983.

### Count III:
### Violation of the Americans with Disabilities Act (42 U.S.C. § 12132)
### (Against IDOC)

82. The allegations of paragraphs 1 through 81 are incorporated herein by reference.

83. Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, applies to IDOC.

84. Dixon is an IDOC facility, and its operation comprises a program and service for Title II purposes.

85. Mr. Hogue has several medical conditions, legal blindness, double hip and left knee replacements, and chronic arthritis, and he had these disabilities throughout the time he was in the IDOC's custody and care. Accordingly, Mr. Hogue is a qualified individual with a disability within the meaning of all applicable statutes.

86. Mr. Hogue repeatedly requested to transfer to another housing unit, for assistance walking, and for his meals to be delivered, but the officers repeatedly denied his requests.

87. IDOC failed to reasonably accommodate Mr. Hogue's medical disabilities and to modify their jail facilities, operations, services, accommodations and programs to reasonably accommodate Mr. Hogue's disabilities, in violation of Title II of the ADA.

88. IDOC's failure to reasonably accommodate Mr. Hogue prevented him from accessing programs and activities, including meals and church service, on the same basis as other inmates.

89. IDOC's violations of the ADA were the proximate cause of Mr. Hogue's injuries and damages, including his injuries from his February 2019 fall down the stairs.

90. Mr. Hogue is entitled to recover for those damages sustained as described in this Amended Complaint as a result of IDOC's violations of the ADA which caused his injuries.

## Count IV:
### Violation of the Rehabilitation Act (29 U.S.C. § 794 et seq.)
### (Against IDOC)

91. The allegations of paragraphs 1 through 90 are incorporated herein by reference.

92. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, applies to IDOC.

93. Dixon is an IDOC facility, and its operation comprises a program and service for Rehabilitation Act purposes.

94. Dixon is part of the IDOC, which receives federal funding.

95. Mr. Hogue has several medical conditions, legal blindness, double hip and left knee replacements, and chronic arthritis, and he had these disabilities throughout the time he was in the IDOC's custody and care. Accordingly, Mr. Hogue is a qualified individual with a disability within the meaning of all applicable statutes.

96. Mr. Hogue repeatedly requested to transfer to another housing unit, for assistance walking, and for his meals to be delivered, but the officers repeatedly denied his requests.

97. IDOC failed to reasonably accommodate Mr. Hogue's medical disabilities and to modify their jail facilities, operations, services, accommodations and programs to reasonably accommodate Mr. Hogue's disabilities, in violation of the Rehabilitation Act.

98. IDOC's failure to reasonably accommodate Mr. Hogue prevented him from accessing programs and activities, including meals and church service, on the same basis as other inmates.

99. IDOC's violations of the Rehabilitation Act were the proximate cause of Mr. Hogue's injuries and damages, including his injuries from his February 2019 fall down the stairs.

100. Mr. Hogue is entitled to recover for those damages sustained as described in this Amended Complaint as a result of IDOC's violations of the Rehabilitation Act which caused his injuries.

***

## PRAYER FOR RELIEF

WHEREFORE, Mr. Hogue prays that this Court:

    A.    Enter judgment in Mr. Hogue's favor and against the Defendants on each Count of this Amended Complaint;

    B.    Award Mr. Hogue compensatory damages against each of the Defendants, jointly and severally, in an amount to be determined at trial;

    C.    Award Mr. Hogue punitive damages against each of the Defendants, jointly and severally, in an amount to be determined at trial;

    D.    Award Mr. Hogue nominal damages against each of the Defendants, jointly and severally, to vindicate Mr. Hogue's rights under the Eighth Amendment to the United States Constitution;

    E.    Award Mr. Hogue the costs of this action against each of the Defendants, jointly and severally, including reasonable attorneys' fees in accordance with 42 U.S.C. §§ 1988(b) and 1997(d); and

    F.    Award any such other and further relief as this Court deems just and proper.

## JURY DEMAND

Mr. Hogue respectfully demands trial by jury of all triable matters.

Dated: February 25, 2020

    Respectfully submitted,

    DENNIS HOGUE

    By:
    <u>/s/ John H. Mathias, Jr.</u>

    John H. Mathias, Jr. (Ill. Bar No. 1792571)
    David Jiménez-Ekman (Ill. Bar No. 6210519)
    LaRue L. Robinson (Ill. Bar No.

6300688)
Leah Song (Ill. Bar No. 6332708)
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350

*Counsel for Plaintiff Dennis Hogue*