046671/21061/MHW/SJG

**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS HOGUE,<br><br>    Plaintiff,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS, WARDEN JOHN VARGA, WEXFORD HEALTH SOURCES, INC., DR. MERRILL ZAHTZ, NURSE SUSAN TUELL, and DOE NO. 1;<br><br>    Defendants. | Case Number 19-cv-50151<br><br>Hon. Judge John Robert Blakey<br><br>Magistrate Judge Lisa A. Jensen |

**DEFENDANTS' MOTION TO DISMISS**

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC., DR. MERRILL ZAHTZ, and N.P. SUSAN TUELL, by and through their attorneys, CASSIDAY SCHADE, LLP, and move this Honorable Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to Dismiss Plaintiff's Second Amended Complaint [ECF #39] and in support thereof, states as follows:

**I.  Introduction**

Plaintiff, a former inmate at the Dixon Correctional Center in Dixon, Illinois, brings this cause of action pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment constitutional rights, and pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff alleges that while he was an inmate at the Dixon Correctional Center, the Defendants failed to acquiesce to his demands for specific housing assignments within the prison. Plaintiff further alleges that as a result of the Defendants not providing him with the housing assignment he demanded, he had difficulty walking to other places inside the prison, and on one occasion fell down a set of stairs. In Count I of his Second

046671/21061/MHW/SJG

Amended Complaint, Plaintiff alleges that the Defendants acted with deliberate indifference between January 2019 and March 2019 by failing to provide him with "accessible housing," "walking assistance" and "food delivery" services which, Plaintiff claims, caused him to fall down some stairs. In Count II of his Second Amended Complaint, Plaintiff alleges that the Defendants acted with deliberate indifference by not changing his housing assignment as he demanded during the period of April 2019 to October 2019. The Defendants now move to dismiss Plaintiff's Second Amended Complaint with prejudice.

## II. Standard of Review

In ruling on a Rule 12(b)(6) motion, the court must dismiss the complaint if the allegations do not state a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 622 (2009). "The fact that the allegations undergirding a plaintiff's claim could be true is no longer enough to save it." *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011). The plaintiff's allegations must reasonably put forward that he has a right to relief by raising that possibility above a "speculative level." *EEOC v. Concentra Health Servs*, 496 F.3d 773, 776 (7th Cir. 2007). If the allegations do not rise above this level, the plaintiff pleads himself out of court. *Id*.

## III. Argument

### A. Individual Defendants

#### a. Controlling Law

The prisoner has the burden to demonstrate deliberate indifference to a serious medical need or condition, and the test of deliberate indifference is a significantly high burden to overcome. *See Roe v. Elyea* 631 F.3d 843, 857 (7th Cir. 2011); *see also Hernandez v. Tex. Dept. of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004). A plaintiff must prove: (1)

046671/21061/MHW/SJG

the existence of a serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

The Plaintiff must establish that each of the Defendant actually knew (independently and subjectively) that he needed treatment for a serious medical condition or risk but nevertheless <u>purposely</u> and <u>deliberately</u> withheld such treatment. *See Sellers*, 41 F.3d at 1102 (emphasis added). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir. 1985). Negligence, gross negligence, or even tortuous recklessness is not enough. *Id.*

### b. Dr. Merrill Zahtz

Recognizing that his claim is nothing more than an impermissible ADA or Rehabilitation Act claim, Plaintiff attempts to couch his claim against Dr. Zahtz as a violation of his Eighth Amendment rights. *See Grzan v. Charter Hosp.*, 104 F.3d 116, 121–22 (7th Cir. 1997); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *William v. Baker*, 2014 WL 1379572 (C.D. Ill. Apr. 8, 2014), citing *Resel v. Fox*, 26 Fed. Appx. 572 * 4 (7th Cir. 2001); *Perrey v. Donahue*, 2007 WL 4277621 at * 4 (N.D. Ind. Dec. 3, 2007); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (a claim for inadequate treatment is improper under the ADA). In his Second Amended Complaint, Plaintiff alleges that Dr. Zahtz acted with deliberate indifference by not

046671/21061/MHW/SJG

providing "reasonable accommodations" to suit his housing preferences. However, Plaintiff relies almost entirely on conclusory allegations, or allegations that do not meet the standard of liability for a deliberate indifference claim under Section 1983.

In his Second Amended Complaint, Plaintiff alleges that upon arrival at the Dixon Correctional Center, the healthcare unit provided him with a permit so he would not be housed on an upper gallery and so he would not have to climb into an upper bunk because, allegedly, he has vision issues and difficulty walking. [ECF #39 at ¶ 20]. This should be the end of the case. However, Plaintiff goes on to allege that on or about October 30, 2018, he allegedly saw Dr. Zahtz for an unspecified reason, at which time Dr. Zahtz allegedly did not order that Plaintiff be moved to a "more suitable housing unit" than the one he was currently living in, though it is unclear why his housing unit at that time was "unsuitable," or even what a "suitable" housing placement would entail. [*Id.* ¶ 23]. Plaintiff alleges he told Dr. Zahtz about his difficulty walking from housing unit 44, but was told in response that there was nothing that could be done and that Plaintiff would have to talk to Warden Varga about his housing assignment. [*Id.* ¶ 28]. Plaintiff alleges, in conclusory fashion, that he made repeated demands to Dr. Zahtz that he be moved to a different housing unit. [*Id.* ¶ 60]. He also alleges, in conclusory fashion and without any further explanation, that he "communicated a lack of reasonable disability accommodations and its likely effect on his well-being" to Dr. Zahtz "verbally and through written grievances." [*Id.* ¶ 67]. Plaintiff then claims that "for over a year" Dr. Zahtz refused to provide Plaintiff with "walking assistance" and "food delivery" services, which Plaintiff contends caused him to fall down a set of stairs.[1] [*Id.* ¶ 69].

---

[1] Plaintiff alleges in his *pro se* complaint that he fell down a set of stairs after slipping on ice, a fact noticeably omitted from the Second Amended Complaint. [ECF #1].

4

046671/21061/MHW/SJG

In conclusory fashion, Plaintiff then alleges that in April 2019, the medical unit stopped providing unspecific treatment after the prison was notified of the instant lawsuit. [ECF #39 ¶ 78]. Plaintiff does not explain what medical treatment he was seeking, or that a denial of such treatment amounted to a violation of his constitutional rights. Moreover, this lawsuit was not filed until July 8, 2019, raising serious concerns about the basis for this allegation. [ECF #1]. Unsurprisingly, Plaintiff's own exhibits to his *pro se* complaint show that in May 2019, he was provided with another medical low bunk / low gallery permit, completely contradicting the allegations in the Second Amended Complaint. [ECF #1, p. 17]. Even accepting Plaintiff's allegations as true, his Second Amended Complaint should be dismissed.

First, Plaintiff has pled himself out of court by alleging that he was provided with a "reasonable accommodation" for his alleged disabilities, namely, a medical permit for a low gallery and a low bunk permit. [ECF #39 at ¶ 20; *see also*, ECF #1, p. 17]. It is implausible that Dr. Zahtz was acting with deliberate indifference towards Plaintiff's alleged disabilities when efforts had already been made to accommodate Plaintiff's alleged medical needs.

Second, Plaintiff has no right to make demands of his medical providers, and a failure to acquiesce to those demands does not amount to a violation of Plaintiff's constitutional rights. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Ciarpiglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Plaintiff alleges that he told the medical staff, including Dr. Zahtz, that he wanted to be housed in a different housing unit. [ECF #39 at ¶¶ 23, 28, 60, 67]. However, it is implausible that Dr. Zahtz was acting with deliberate indifference by not freely giving into Plaintiff's demands for specific housing assignments because, as a matter of law, his is under no obligation to do so. *Forbes*, 112 F.3d at 267; *Ciarpiglini*, 352 F.3d at 331.

046671/21061/MHW/SJG

Third, and in a similar vein, Plaintiff has no constitutional right whatsoever to make any demands about his housing assignment. *Meachum v. Fano,* 427 U.S. 215 (1976); *Shango v. Jurich,* 681 F.2d 1091, 1098 (7th Cir. 1982). It is implausible that Dr. Zahtz acted with deliberate indifference towards Plaintiff by not assigning him to another housing unit, as Plaintiff has no right to make such a demand.

Fourth, Plaintiff has failed to show that Dr. Zahtz was specifically aware of any risk of harm to Plaintiff due to his alleged disabilities. *See Sellers*, 41 F.3d at 1102. Plaintiff alleges he told Dr. Zahtz he needed some unspecified "accommodation" and would face some generalized harm if he was not provided the accommodation. These vague, conclusory allegations do not meet the federal pleading standards in *Iqbal* and *Twombly*. Moreover, his allegations that he had difficulty walking to the cafeteria, skipped 10 to 15 meals over the course of some 15 months, and that he once slipped on some ice on a set of stairs are so tenuous and unlikely to occur that it would be impossible for Dr. Zahtz to anticipate that these "harms" would befall Plaintiff.

Lastly, the medical staff has no authority to change an inmate's housing assignment. Housing assignments are a matter for the prison administrative and security staff to decide—not the employees of a private contractor providing medical services to inmates. Plaintiff alleges that, in fact, Dr. Zahtz told him that if he wanted to be housed in a different housing unit that he would need to talk to Warden Varga. [ECF #39 at ¶ 28]. Plaintiff also admits his housing unit was, in fact, changed on several occasions by Warden Varga. [*Id.* ¶¶ 63, 74, 77]. Plaintiff's claim that Dr. Zahtz somehow acted with deliberate indifference by not changing his housing unit, providing him with "walking assistance" or not providing him with food delivery service is implausible. Therefore, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

6

046671/21061/MHW/SJG

### c. N.P. Susan Tuell

Plaintiff's claim against N.P. Tuell is nothing more than a cut-and-paste of the allegations against Dr. Zahtz and fails for all of the same reasons. Again, Plaintiff tries to use the Eighth Amendment to do what he could not do under the ADA or the Rehabilitation Act, by seeking to hold N.P. Tuell liable for not providing him with "reasonable accommodations" such as the housing unit of his choice, "walking assistance" and "food delivery service." In doing so, Plaintiff alleges that, in fact, he was provided a low bunk / low gallery pass by the medical unit for his medical condition. [ECF #39 at ¶ 20]. This allegation alone is the end of Plaintiff's case.

Plaintiff's specific allegations against N.P. Tuell are threadbare and conclusory at best. He alleges that on or about December 9, 2018, he fell while walking back from church. He further alleges that N.P. Tuell reviewed an offender injury report related to Plaintiff's fall, and alleges that she failed to order that he be moved to a "more suitable housing unit." [ECF #39 at ¶ 26]. Of course, Plaintiff does not explain how a single fall entitles anyone to "more suitable housing," what that housing might entail, how his housing unit at that time was "unsuitable," that N.P. Tuell was even aware that Plaintiff needed to be in more "suitable housing," or that N.P. Tuell even had the ability to change an inmate's housing assignment.

Plaintiff goes on to allege that he told N.P. Tuell about his difficulty walking from housing unit 44, but was told in response that there was nothing she could do and that Plaintiff would have to talk to Warden Varga about his housing assignment. [ECF # 29 at ¶ 28]. Again, there is nothing about this allegation that could plausibly amount to a violation of his constitutional rights. If anything, this allegation goes to show that N.P. Tuell discharged whatever conceivable duty she might have by advising Plaintiff on how he could put in for a change in his housing assignment.

7

046671/21061/MHW/SJG

Finally, Plaintiff further alleges that on March 28, 2019, N.P. Tuell saw Plaintiff for a complaint of neck pain and requested to be switched from a hard neck collar to a soft one. [ECF #39 at ¶ 49]. Plaintiff does not bother to explain what exactly was unconstitutional about N.P. Tuell's conduct at that time. Of course, Plaintiff's demand to have his neck collar changed does not amount to a violation of his rights, because he has no right to make demands of his health care providers. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Ciarpiglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Moreover, the fact that Plaintiff had a soft neck brace as compared to a hard neck brace does not amount to a claim for deliberate indifference against N.P. Tuell, as it is clear he was provided treatment for whatever neck pain he might have.

As with Dr. Zahtz, Plaintiff's claim against N.P. Tuell should be dismissed as implausible and based on conclusory allegations. First, Plaintiff has pled himself out of court by alleging that he was provided with a "reasonable accommodation" for his alleged disabilities, namely, a medical permit for a low gallery and a low bunk permit. [ECF #39 at ¶ 20; *see also*, ECF #1, p. 17]. It is implausible that N.P. Tuell was acting with deliberate indifference towards Plaintiff's alleged disabilities when efforts had already been made to accommodate Plaintiff's alleged medical needs.

Second, Plaintiff has no right to demand any specific treatment. *Forbes*, 112 F.3d at 267; *Ciarpiglini*, 352 F.3d at 331. Third, he has no right to demand any specific housing placement. *Meachum v. Fano,* 427 U.S. 215 (1976); *Shango v. Jurich,* 681 F.2d 1091, 1098 (7th Cir. 1982). Plaintiff's allegations that N.P. Tuell failed to provide him with "suitable" housing accommodations simply do not implicate his constitutional rights.

Lastly, Plaintiff's claim is simply implausible, and his conclusory allegations fail to meet the *Iqbal* and *Twombly* pleading standards. Here, Plaintiff alleges that N.P. Tuell failed to assign

046671/21061/MHW/SJG

him to a "suitable" housing unit, failed to give him "walking assistance," and failed to provide him with food delivery services. To be sure, N.P. Tuell, like Dr. Zahtz, is a medical provider, not a prison administrator. N.P. Tuell does not have the authority to make housing decisions for inmates, she is not responsible for coordinating "walking assistance" for inmates, and she is not responsible for food delivery services—these issues all fall within the scope of the prison administration's responsibilities. It is simply implausible that N.P. Tuell violated Plaintiff's constitutional rights by failing to exceed her responsibilities and usurp the prison administration's authority.

Moreover, Plaintiff admits that the prison health care unit gave him a low bunk / low gallery medical permit upon his arrival at the Dixon Correctional Center. N.P. Tuell has no control over whether or not the prison administration honored that permit. Likewise, when Plaintiff claims he asked N.P. Tuell for a different housing assignment, she did not ignore him, she apparently told Plaintiff where he should direct that concern—to Warden Varga. These actions are the antithesis of deliberate indifference, and Plaintiff has likewise failed to state a cause of action against N.P. Tuell.

Therefore, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

### B. Wexford Health Sources, Inc.

Plaintiff has failed to allege a viable cause of action against Wexford Health Sources, Inc. for a violation of his constitutional rights in Count I or Count II of his Second Amended Complaint. In *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), the Supreme Court held that there is no vicarious liability based on employee misconduct for government entities, or private entities acting to fulfill a government duty, and instead the employer can only be sued

9

046671/21061/MHW/SJG

directly for its own misconduct. To hold a defendant, such as Wexford, directly liable under *Monell*, Plaintiff must establish:

> evidence of (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) that the constitutional injury was caused by a person with final policymaking authority.

*Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007) (quotation marks omitted). To establish a right to recover, a prisoner must show that the corporation supports a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners. *Woodward v. Corr. Med. Servs. of Ill., Inc.,* 368 F.3d 917, 927 (7th Cir. 2004). Since a *Monell* claim is not premised on *respondeat superior*, the corporate policy must be the "direct cause" or "moving force" behind the alleged constitutional violation. *Woodward,* 368 F.3d at 927.

First, since Plaintiff had failed to state a cause of action against Wexford's employees, Dr. Zahtz and N.P. Tuell, it follows that there is no underlying constitutional violation that could have been caused by an unconstitutional policy maintained by Wexford. Assuming, *arguendo*, that Plaintiff has adequately pled a constitutional violation, Plaintiff has failed to allege a plausible unconstitutional policy maintained by Wexford.

In his Second Amended Complaint, Plaintiff lodges a single conclusory allegation that "Pursuant to a policy, pervasive practice, or custom at Dixon and Wexford, Defendants denied [Plaintiff] reasonably disability accommodations such as accessible housing, walking assistance, [and] food delivery [. . . .]" [ECF #39 ¶ 54]. Not only does this conclusory allegation fail to meet *Iqbal* and *Twombly* pleading standards, but there is nothing else in Plaintiff's complaint about what Wexford's purported "unconstitutional" policy is. Moreover, Plaintiff merely relies on the circumstances surrounding his own treatment to establish the existence of a policy or

10

046671/21061/MHW/SJG

practice, which does not amount to a *Monell* claim. *See Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003). A plaintiff's own circumstances "demonstrate nothing more than isolated incidents," which do not establish whether defendants have a general policy or a widespread practice of an unconstitutional nature. *Id*.

Moreover, it is implausible that Wexford's policies are even applicable. Wexford is a private contractor that provides medical services to inmates at prisons throughout the State of Illinois. Plaintiff's complaint relates to the administrative functions of the Dixon Correctional Center that are beyond the scope of Wexford's responsibilities. Wexford is not responsible for inmate housing decisions, it is not responsible for providing "walking assistance" to inmates, and it is not responsible for coordinating food delivery services to inmates. Plaintiff's allegation that Wexford maintains an "unconstitutional" policy regarding these administrative issues are implausible and vague, and do not meet the pleading standards in *Iqbal* and *Twombly*.

Lastly, Plaintiff alleges that Wexford stopped providing medical treatment to Plaintiff in April 2019 because he filed this lawsuit. [ECF #39 at ¶ 78]. Of course, a corporation does not practice medicine, so it is implausible that Wexford itself stopped providing medical treatment to Plaintiff, and this allegation does not meet the liability standard set forth in *Monell*. Moreover, as explained above, this allegation has no basis in reality. Plaintiff's lawsuit was not filed in April 2019, it was filed in July 2019. Moreover, Plaintiff's allegation is patently false, as he attached yet another low bunk / low gallery permit to his *pro se* complaint dated in May 2019. [ECF #1, p. 17]. Thus, Plaintiff's claim that Wexford stopped providing him medical treatment in April 2019 is implausible, and Plaintiff has failed to state a cause of action against Wexford.

Therefore, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

046671/21061/MHW/SJG

WHEREFORE, the Defendants, WEXFORD HEALTH SOURCES, INC., DR. MERRILL ZAHTZ, and N.P. SUSAN TUELL, respectfully request that this Honorable Court enter an Order: (1) Granting the instant motion to dismiss; (2) dismissing Plaintiff's cause of action with prejudice; and (3) for any other relief deemed equitable and just.

        Respectfully submitted,

        CASSIDAY SCHADE LLP

        By: /s/ Stephen J. Gorski
            Stephen J. Gorski

        One of the Attorneys for Defendants, WEXFORD HEALTH SOURCES, INC, DR. MERRILL ZAHTZ, and N.P. SUSAN TUELL.

Matthew H. Weller
Stephen J. Gorski
CASSIDAY SCHADE LLP
120 W. State Street, Suite 401
Rockford, IL  61101
Phone: 815-962-8301
Fax:    815-962-8401
mweller@cassiday.com
sgorski@cassiday.com

046671/21061/MHW/SJG

## **CERTIFICATE OF SERVICE**

    I hereby certify that on June 29, 2020, I electronically filed the foregoing document with the clerk of the court for Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

                        /s/ Stephen J. Gorski

Stephen J. Gorski - 6306046
CASSIDAY SCHADE LLP
120 W. State Street, Suite 401
Rockford, IL 61101
(815) 964-8130
(815) 962-8401 (Fax)
sgorski@cassiday.com