**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

DENNIS HOGUE,

               Plaintiff,

      v.

ILLINOIS DEPARTMENT OF CORRECTIONS,
WARDEN JOHN VARGA, WEXFORD HEALTH
SOURCES, INC., DR. MERRILL ZAHTZ, NURSE
SUSAN TUELL, and DOE NO. 1,

           Defendants.

Jury Demand
Case No. 3:19-cv-50151
Hon. Lisa A. Jensen

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

### INTRODUCTION

The Court should deny Defendants'[1] motions to dismiss because they were deliberately indifferent to Plaintiff Dennis Hogue's serious medical needs—blindness and severe mobility problems—causing him ongoing severe pain and, ultimately, additional injuries.  Mr. Hogue was an inmate at Dixon Correctional Center ("Dixon") from January 29, 2018, through October 10, 2019.  Mr. Hogue is legally blind and has extreme mobility problems as a result of double hip and left knee replacements, and chronic arthritis.  Mr. Hogue repeatedly and personally asked each of the individual Defendants (the warden, a doctor and nurse at Dixon) for housing and other accommodations that would accommodate his daily activities given his medical needs.  But, while Mr. Hogue was automatically given a permit for healthcare due to his various

---

[1] Plaintiff submits this Response in Opposition to Warden John Varga ("Warden Varga"), Wexford Health Sources, Inc. ("Wexford"), Dr. Merrill Zahtz ("Dr. Zahtz"), Nurse Susan Tuell ("Nurse Tuell")(collectively, "Defendants") motions to dismiss ("ECF Nos. 61, 63") Plaintiff's Second Amended Complaint ("SAC").

1

underlying serious medical conditions, they refused his requests for housing reassignment and other services. As a result, Mr. Hogue suffered intense ongoing pain as he had to move from place to place as part of normal daily activities such as eating, and he ultimately slipped and fell on icy stairs outside his inapt housing, receiving even worse injuries. These allegations establish a claim for deliberate indifference under the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

Defendants' motions to dismiss assert they were unaware of any risk of harm to Mr. Hogue, that sufficient accommodations for his conditions were already provided, or that they had no authority to provide certain accommodations for his conditions. (Mots. Dismiss, ECF No. 61 at 6-8, ECF No. 63 at 5-8). But Mr. Hogue has clearly alleged that he personally told each of the individual Defendants about his serious medical needs repeatedly. (SAC ¶¶ 28, 38, 60, 64, 67, 69, 75). Mr. Hogue also alleges that the single accommodation Defendants provided, assignment to a low bunk, was insufficient to address his serious medical needs because he still was required to move around Dixon in severe pain and ultimately was injured even worse. (*Id*. ¶¶ 2-3, 24, 26, 39-43, 50). The law is clear that prison and medical officials act with deliberate indifference, respectively, when they do nothing to address a prisoner's serious medical condition or when their medical treatment decisions fall below the accepted standards of the medical community. *See e.g., Griffin v. Wexford Health Sources, Inc.*, 244 F. Supp. 3d 787, 791-92 (N.D. Ill. 2016); *Collignon v. Milwaukee Cty.*, 163 F.3d 982, 988 (7th Cir.1998) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322–23, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)). Accordingly, the SAC states a cause of action under 42 U.S.C. § 1983 and the Court should deny Defendants' motions to dismiss.

2

## STATEMENT OF FACTS

Mr. Hogue alleges the following facts, which the Court must accept as true on a motion to dismiss. *See*, *e.g.*, *Office of State's Attorney Cook Cty.*, 630 F.3d 616, 619 (7th Cir. 2010).

From January 29, 2018, through October 10, 2019, Mr. Hogue was a prisoner in the care and custody of the IDOC. (SAC ¶¶ 1, 9, 18). During the entirety of Mr. Hogue's incarceration, he was legally blind and suffered from several pre-existing debilitating medical conditions, including double hip and left knee replacements, and chronic arthritis. (*Id.* ¶¶ 1, 18-20). Despite these medical conditions, Defendants subjected Mr. Hogue to multiple distinct violations of his Eighth Amendment rights resulting in serious and debilitating bodily injuries, for which he seeks relief pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. (*Id.* ¶ 1).

Mr. Hogue lived in three different housing units at Dixon: Housing Units 44, 66, and 38. (*Id.* ¶ 2). In Housing Unit 44, he was forced to walk outside, even in the snow, to meal service (hereafter "chow") and church service with no assistance. (*Id.* ¶¶ 2, 22). As a result, Mr. Hogue would often fall and have to crawl to keep up. (*Id.* ¶¶ 2, 24, 59). Officer Doe verbally harassed and humiliated Mr. Hogue about not being able to keep up with the line. (*Id.* ¶¶ 2, 24, 59). Upon information and belief, Mr. Hogue missed at least 10-15 meals as a result of his inability to make it to chow. (*Id.* ¶¶ 2, 25, 59).

Despite making requests to move into a unit that reasonably accommodated his medical conditions, Mr. Hogue was next forced to move into Housing Unit 66 with stairs and a high gallery, despite his being legally blind and ambulatory handicapped. (*Id.* ¶¶ 3, 34-35, 63, 74). On at least one occasion, Mr. Hogue fell down the stairway, lost consciousness, and seriously injured his hip, back, and neck. (*Id.* ¶¶ 3, 39-40, 65, 76). He continues to suffer from these likely permanent

3

injuries post-release and has been hospitalized numerous times since his release. (*Id.* ¶¶ 3, 43, 70).

Mr. Hogue exhausted his administrative remedies in accordance with the Prison Litigation Reform Act's requirements. (*Id.* ¶ 4).

## LEGAL STANDARD

The Federal Rules permit notice pleading and only require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, dismissal for failure to state a claim under Rule 12(b)(6) is proper only where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). Stated differently, the Court may dismiss the complaint only if it fails to contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plaintiff's burden of persuasion with respect to a Rule 12(b)(6) motion to dismiss is "not high." *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 463 (7th Cir. 2010) (quoting *Ashcroft,* 556 U.S. 662 at 678)). All well-pleaded allegations are to be taken as true and all reasonable inferences are to be drawn in the plaintiff's favor. *Opp v. Office of State's Attorney of Cook County,* 630 F.3d at 619. The complaint must only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bonte,* 624 F.3d at 463. As such, "the purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits;" the plaintiff need not furnish evidence to survive a complaint's legal sufficiency, rather, "a plaintiff need only show that the complaint contains the necessary allegations to state a claim." *Gibson v. City of*

4

*Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990); *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012) (citations omitted).

## ARGUMENT

### I.  The SAC States A Section 1983 Claim Against Warden Varga.

Mr. Hogue's allegations that Warden Varga refused to place Mr. Hogue in a housing unit that reduced his risk of severe injury resulting from his serious medical conditions, or provide other accommodations to reduce his chance of injury, make out a claim under 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must show: (1) his constitutional rights were violated (2) by a person acting under color of state law.  *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).  The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment.  U.S. Const., amend. VIII.  Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).  "To succeed on a claim of deliberate indifference to a condition of confinement, a prisoner must show that a prison official knew of a prison condition that presented an objective, sufficiently serious risk of harm, yet disregarded that risk by failing to take reasonable measures to address it."  *McGowan v. Shearing*, No. 14-CV-14-NJR-DGW, 2015 WL 8150216, at *7 (S.D. Ill. Dec. 8, 2015) (citing *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008)).  Here, Mr. Hogue satisfies both requirements.

*First*, Mr. Hogue satisfies the first prong of the deliberate indifference analysis—Mr. Hogue's medical conditions were "objectively, 'sufficiently serious.'"  *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  A "medical need

is sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* Moreover, a "medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Here, Mr. Hogue alleges that he was legally blind and suffered from several pre-existing debilitating medical conditions, including double hip and left knee replacements, hepatitis C, schizoaffective disorder, asthma, and chronic arthritis during the entirety of his incarceration. (SAC ¶¶ 1, 18-20). These medical conditions were sufficiently serious that they presented a substantial risk of harm if left unaddressed—the most obvious risks including immobility, falls, and injuries, which would be apparent to any layperson. *See Lewis*, 864 F.3d at 563 (holding that a medical need is sufficiently serious if "so obvious that even a lay person would perceive the need for a doctor's attention."). Moreover, courts have found similar medical conditions, such as Mr. Hogue's, "sufficiently serious." *See id.* (finding prisoner's muscle spasm and accompanying back pain was a serious medical condition); *Linton* v. *Butler*, No. 16-CV-00492-NJR, 2016 WL 6143152, at *4 (S.D. Ill. Oct. 21, 2016) (finding that prisoner's various conditions that made him "unable to walk or otherwise move about the institution without great pain obviously constitute[d] a chronic and persistent condition" and was objectively, a serious medical need); *McGowan*, 2015 WL 8150216, at *1, 7 (finding prisoner who was an amputee that was housed in a cell that was not handicap accessible and who did not have access to a useable prosthetic leg or other assistive device, suffered from a serious medical condition). Accordingly, Mr. Hogue satisfies the first prong of the deliberate indifference standard with respect to Warden Varga.

**Second**, Mr. Hogue satisfies the subjective component of the deliberate indifference standard. To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind" meaning that the "defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citations omitted). Here, the SAC sufficiently alleges that Mr. Hogue informed Warden Varga of his difficulties, pain and injuries associated with his serious medical conditions—therefore Warden Varga "knew of the substantial risk of harm" that Mr. Hogue's medical condition posed. Mr. Hogue alleges:

- "Mr. Hogue complained directly to Warden Varga about the difficult conditions in Unit 66. He explained to Warden Varga that he was legally blind and had difficulty walking up and down the stairs . . ." (*id.* ¶ 60);

- "Mr. Hogue repeatedly asked Warden Varga . . . to transfer him to another housing unit[.]" (*id.* ¶ 64);

- "Mr. Hogue informed Warden Varga that he had difficulty walking up and down the stair[s]" (*id.* ¶ 67);

- "Mr. Hogue communicated the lack of reasonable disability accommodations and its likely effect on his well-being to Warden Varga . . . verbally and through written grievances." (*id.* ¶ 75); and

- "Mr. Hogue explained to Warden Varga . . . that he was legally blind and expressed his difficulty walking up and down the stairs." (*id.* ¶ 38).

Despite knowing of these serious medical conditions and the resulting pain, harm and injury that Mr. Hogue suffered as a result, Warden Varga disregarded these conditions and the substantial risk of harm that these conditions posed to Mr. Hogue's health and well-being. (*Id.* ¶¶ 38, 45, 60, 64,

68-70). Mr. Hogue alleges that Warden Varga ignored his concerns and requests and repeatedly refused to transfer him or make other accommodations for his serious medical needs. (*Id*. ¶¶ 38, 67-69, 75). Mr. Hogue also alleges Warden Varga's failure to take any action to address his serious medical conditions despite knowing of these conditions and the continued increased risk of injury to him, which ultimately occurred, is sufficient to state a claim for deliberate indifference. *See e.g., Griffin*, 244 F. Supp. 3d at 791-92 (finding that plaintiff raised a plausible inference that warden actually knew about, yet turned a blind eye to, plaintiff's serious medical condition where plaintiff alleged that he told the warden personally that his medical needs remained unmet, but warden failed to take appropriate action); *Bentz v. Ghosh*, 718 F. App'x 413, 419 (7th Cir. 2017) (holding that allegations of inmate's complaint were sufficient to state claim against correctional officers for violation of Eighth Amendment, in inmate's § 1983 action based on officers' alleged disregard of inmate's tooth pain, where complaint asserted that officers, in response to inmate's report of abscessed tooth, did nothing other than state that inmate's abscessed tooth "looked very serious" and "I am not going to do anything for you.").

Accordingly, Mr. Hogue states a cause of action for deliberate indifference against Warden Varga and the Court should deny his motion to dismiss.

## II.   The SAC States Section 1983 Claims Against Dr. Zahtz, Nurse Tuell, and Wexford.

### A.  Dr. Zahtz And Nurse Tuell.

Mr. Hogue's allegations that Dr. Zahtz and Nurse Tuell were deliberately indifferent because they failed to provide accommodations for him other than a low bunk permit states a Section 1983 claim against them. A medical professional acting in his or her professional capacity may be held to have displayed deliberate indifference . . . if "the decision by the professional is

8

such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Collignon*, 163 F.3d at 988 (quoting *Youngberg*, 457 U.S. at 322–23). That is, a plaintiff states a claim by showing that, "after becoming aware of a prisoner's serious medical need, the physician had consciously disregarded it nonetheless[,]" or that "the physician had not responded reasonably to his condition." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir.2006) (internal quotations and citations omitted).

   Mr. Hogue's allegations show that Dr. Zahtz and Nurse Tuell knew of his serious medical conditions but consciously disregarded them. Mr. Hogue alleges, "[o]n or about October 30, 2018, Dr. Zahtz saw Mr. Hogue as a patient and reviewed his medical recommendations. Although Dr. Zahtz was aware that Mr. Hogue had eyesight problems, he did not recommend or take any action to have Mr. Hogue moved to a more suitable housing unit." (*Id.* ¶ 23). Additionally, "[d]uring Mr. Hogue's visits to the healthcare clinic, he explained his difficulty walking from Unit 44 to medical personnel, including Dr. Zahtz and Nurse Tuell, but he was told that there was nothing that could be done and that Mr. Hogue would have to talk to Warden Varga." (*Id.* ¶ 28). Mr. Hogue repeatedly complained to Dr. Zahtz and Nurse Tuell, but they refused to act. This is sufficient to state a cause of action for deliberate indifference as it is well-settled that the "decision of a medical professional to ***do nothing***, even though [he or] she knows that a patient has a serious medical condition requiring prompt treatment that the professional is capable of and responsible for providing, amounts to deliberate indifference." *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) (emphasis added).

   Dr. Zahtz and Nurse Tuell assert that they cannot have been deliberately indifferent because Mr. Hogue was provided with a single "reasonable accommodation"—a medical permit

for a low gallery and a low bunk permit—and that they had no duty to comply with the specific medical request of a prisoner. (Mot. Dismiss at 5, 8, ECF No. 63). They are wrong for three reasons.

*First*, as an initial matter, the fact that Mr. Hogue may have received some accommodation, does not foreclose his deliberate indifference claim. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) ("That the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition.") (internal quotations and citations omitted). Here, the inaction by Dr. Zahtz and Nurse Tuell after numerous complaints by Mr. Hogue further aggravated his condition, resulting in additional falls and subsequent pain. (SAC ¶¶ 69-70). They cannot avoid their duty to provide reasonable medical treatment in response to Mr. Hogue's serious medical conditions by simply pointing to existing accommodations or treatment.

*Second*, deliberate indifference may be inferred based on a medical professional's erroneous treatment decisions. *See Johnson*, 433 F.3d at 1018 n.6 ("A medical professional may evidence deliberate indifference through his treatment decisions.") (citing *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir.1996)). Indeed, "a medical professional's actions may reflect deliberate indifference if he [or she] 'chooses an easier and less efficacious treatment without exercising professional judgment.'" *Arnett*, 658 F.3d at 751 (citations omitted). In this case, even if Dr. Zahtz and Nurse Tuell did not accommodate Mr. Hogue's specific request for alternative housing accommodations, their choice to do nothing, or respond appropriately, was deliberately indifferent to Mr. Hogue's serious medical conditions. For example, the court in *McGowan*, 2015 WL 8150216, at *7 found that the plaintiff prisoner stated a claim for deliberate

10

indifference where the defendant doctor was aware that the prisoner did not have his new prosthetic leg, but failed to take any action to ensure that plaintiff was able to move about his cell, access the toilet, or shower. And in *Linton*, 2016 WL 6143152, at \*5, the court found plaintiff stated a cause of action for deliberate indifference against health care administrator where she was aware of his serious medical condition that caused him difficulty moving around the prison, but deprived him––or delayed the provision of—needed accommodations like a cane or wheelchair.

*Third*, Mr. Hogue also states a claim against Dr. Zahtz and Nurse Tuell based on their deliberate indifference to Mr. Hogue's prolonged, unnecessary pain. *See Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (per curiam) ("[D]eliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim[,]" and "[e]ven a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference."). Here, Mr. Hogue told Dr. Zahtz and Nurse Tuell of his severe medical conditions, but they refused to provide appropriate treatment. (SAC ¶¶ 23, 28, 60-61, 67-69, 75, 78). As a result, Mr. Hogue was exposed to prolonged unnecessary pain including chronic back pain and falls. (*Id.* ¶¶ 69-70, 78, 80). Courts have found even shorter periods of delay with less serious medical conditions sufficient to state a claim for deliberate indifference. *See e.g., Rodriguez v. Plymouth Ambulance Servic*e, 577 F.3d 816, 832 (2009) (state employees could be liable for four-day delay in treating prisoner who complained that his IV was causing him serious pain); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir.2008) (guards could be liable for delaying treatment of broken nose for a day and a half); *Edwards v. Snyder*, 478 F.3d 827, 831–32 (7th Cir.2007) (a plaintiff who painfully dislocated his finger and was needlessly denied treatment for two days stated a deliberate-indifference claim).

Accordingly, the SAC states a cause of action against Dr. Zahtz and Nurse Tuell.

11

### B. Wexford.

A private corporation that contracts to provide essential government services can be held liable under Section 1983. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015). The corporation can be held liable if "the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Id.*; *see also Monell v. Dep't of Social Serv. of N.Y.C.*, 436 U.S. 658 (1978).

Mr. Hogue states a claim against Wexford so long as he demonstrates that "his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields*, 746 F.3d at 796. "Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority." *Taylor v. Wexford Health Sources, Inc.*, No.15 C 5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016). But at the pleading stage, once a plaintiff identifies the nature of the violation against the individual actors, conclusory allegations of a policy or practice suffice to advance to discovery. *See, e.g., Taylor*, 2016 WL 3227310, at *4 (holding that where some facts are pleaded to put the defendant on notice of the alleged wrongdoing, *Monell* policy or practice claims may proceed with conclusory allegations of a policy or practice); *see also Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) ("Courts in this district . . . have allowed *Monell* [policy or practice] claims to proceed even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing.") (internal quotations and citations omitted).

In this case, the SAC alleges that Wexford had a practice and custom of denying alternative accommodations for prisoners' medical conditions, that this policy constituted deliberate indifference to their medical needs in violation of the Eighth Amendment, and that Mr. Hogue was ultimately injured as a result of this policy.  For example, the SAC alleges that Mr. Hogue was granted a medical permit for a low gallery and a low bunk permit, but no further consideration was given to alternative accommodations to treat Mr. Hogue's serious medical needs, even after experiencing continual injuries, falls, and pain.  (SAC ¶¶ 20, 23, 26, 28, 39-43).  Further, Wexford's practice and custom allowed Dr. Zahtz and Nurse Tuell to deny, for over a year, Mr. Hogue's request to "transfer to an accessible housing unit despite being aware of his serious medical conditions" and "to provide walking assistance and food delivery when they knew about Mr. Hogue's needs given his legally blind status and walking difficulties. . ."  (SAC ¶ 69).  This unjustified delay led to Mr. Hogue falling down the stairs and subjected him to further serious injuries.  (*Id.*).

Additionally, the SAC also alleges that Mr. Hogue suffered further pain and injury as a result of Wexford's widespread practice and custom of denying medical treatment in response to patient complaints.  Here, after Mr. Hogue brought suit, Wexford, Dr. Zahtz, and Nurse Tuell "stopped providing Mr. Hogue any access to medical treatment… [y]et he continued to suffer from severe pain." (*Id.* ¶ 78).  In fact, Mr. Hogue continues to suffer from his injuries today.  (*Id.* ¶ 80).  This continued denial and lack of appropriate response to address Mr. Hogue's serious medical conditions while incarcerated serves as further evidence of a "Wexford policy, custom, or practice of deliberate indifference to medical needs."

Accordingly, the SAC states a cause of action against Wexford and the Court should deny its motion to dismiss.

**CONCLUSION**

For the above reasons, Mr. Hogue respectfully requests that the Court enter an order denying the Defendants' motions to dismiss.


Dated: July 27, 2020

<div style="margin-left:50%">

Respectfully submitted,

DENNIS HOGUE

By:
/s/ David Jiménez-Ekman

John H. Mathias, Jr. (Ill. Bar No. 1792571)
David Jiménez-Ekman (Ill. Bar No. 6210519)
Leah Song (Ill. Bar No. 6332708)
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
*Counsel for Plaintiff Dennis Hogue*

</div>

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that s/he caused a copy of the foregoing document to be filed

electronically with the Clerk of the United States District Court for the Northern District of

Illinois. The filing of the document will generate electronic service of the document on counsel

of record.

Dated: July 27, 2020

<div style="margin-left: 50%;">

/s/ David Jiménez-Ekman

John H. Mathias, Jr. (Ill. Bar No. 1792571)
David Jiménez-Ekman (Ill. Bar No. 6210519)
Leah Song (Ill. Bar No. 6332708)
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
*Counsel for Plaintiff Dennis Hogue*

</div>